A form of order consistent with the findings here expressed may be presented for signature.

### DURKIN v. WADLEY CO.
### Civ. No. 3168.

United States District Court,
S. D. Indiana, Indianapolis Division.
Oct. 28, 1953.

William S. Tyson, Washington, D. C., Herman Grant and Raymond Jensen, Chicago, Ill., Stuart Rothman, Washington, D. C., Solicitor, in Department of Labor, for plaintiff.

Ross, McCord, Ice & Miller, George P. Ryan, Indianapolis, Ind., for defendant.

STECKLER, District Judge.

The Court; having considered the pleadings, and Stipulation of Facts filed in this action July 8, 1953, and the exhibits submitted therewith, and now being fully advised in the premises, makes the following Findings of Fact and Conclusions of Law:

### Findings of Fact.

1. Defendant, the Wadley Company, is and at all times hereinafter mentioned was, a corporation organized under and existing by virtue of the laws of the State of Indiana, having its principal office at 335 West North Street, Indianapolis, Indiana.

2. Defendant maintains and operates five processing plants located in the State of Indiana at Indianapolis, Terre Haute, and Columbus, and in the State of Illinois at Pana and Mattoon.

a. At its Indianapolis plant defendant is engaged in the processing of poultry, eggs, and cream.

b. At its Terre Haute Plant defendant is engaged in the processing of poultry, eggs, and condensed buttermilk.

c. At its Columbus plant defendant is engaged in processing poultry and eggs.

d. At its Pana plant defendant is engaged in processing poultry and eggs.

e. At its Mattoon plant defendant is engaged in processing eggs.

f. A substantial portion of the products processed at each of defendant's five processing plants is shipped, delivered, and sold to customers located in States other than those in which each of the individual plants is located. The parties have stipulated that defendant's employees performing processing operations at each of defendant's processing plants are engaged in the production of goods for commerce, within the meaning of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.A. § 201 et seq.

3. Defendant maintains and operates six country routes directly out of three of its processing plants, as hereinbelow described.

a. Defendant operates one country route out of its Terre Haute processing plant. One of defendant's employees in the Terre Haute plant operates the country route. This employee, hereinafter referred to as a "route employee", in operating the country route, is engaged away from defendant's Terre Haute processing plant in purchasing and picking up poultry and eggs from farmers along his route, and then transporting

these products by truck from such farmers' farms to the Terre Haute processing plant. Due to seasonal variations the country route is operated a varying number of days each workweek. In some workweeks the route employee, in addition to operating the country route, also performs work in the Terre Haute processing plant and/or performs trucking work other than that related to the country route.

The route employee at the Terre Haute plant works from 40 to 60 hours per week. He is compensated at a regular rate of $1.25 per hour. In workweeks that the route employee is engaged both in operating his country route and in performing work in the Terre Haute plant and/or performing trucking work other than that related to the country route, he is paid time and one-half his regular rate for all hours worked in excess of 40. In workweeks in which the route employee is engaged exclusively in operating the country route, he is paid time and one-half his regular rate for all hours worked in excess of 48 per week.

b. Defendant operates four country routes out of its Pana, Illinois processing plant. Four of defendant's employees in its Pana plant operate the four country routes. These employees, hereinafter referred to as "route employees", in operating the four country routes, are engaged away from defendant's Pana processing plant in purchasing and picking up poultry and eggs from farmers along their routes and then transporting these products by truck from such farmers' farms to the Pana processing plant.

These four route employees work 8 to 10 hours per day and five days per week in operating the country routes. In addition to operating the country routes, the four route employees perform work in the Pana processing plant and/or perform trucking work other than that related to the country routes. In performing this work the route employees work one day per week, 5 or 6 hours per day. These four route employees are paid at a rate of $1 per hour and time and one-half said rate of pay for all hours worked in excess of 40 per week.

Defendant holds a State license to trade in live market poultry at this plant, and a separate license for each of defendant's four motor vehicles used in the purchase of poultry on the route, as required by the Illinois Poultry Dealers License Law, Ill.Rev.Stat.1953, c. 8, § 127 et seq.

Defendant holds a State Class Two (II) Dealer's License at this plant to purchase eggs, as required by the Illinois Egg Law, Ill.Rev.Stat.1951, c. 56½, § 55a et seq.

c. Defendant operates one country route out of its Mattoon, Illinois processing plant. One of defendant's employees in its Mattoon plant operates this country route. This employee, hereinafter referred to as a "route employee", in operating the country route, is engaged away from defendant's Mattoon processing plant in purchasing and picking up poultry and eggs from farmers along his route and then transporting these products by truck from such farmers' farms to the Mattoon processing plant.

This route employee normally works 9 hours per day, five days per week in operating the country route. In addition this employee works 9 hours per day, one day per week in performing work at the Mattoon processing plant. This employee is paid $1 per hour and time and one-half said rate for all hours worked in excess of 40 per week.

Defendant holds a State license to trade in live market poultry at this plant, and a separate license for defendant's motor vehicle used in the purchase of poultry on the route, as required by the Illinois Poultry Dealers License Law.

Defendant holds a State Class Two (II) Dealer's License to purchase eggs, as required by the Illinois Egg Law.

d. The parties have stipulated that defendant's route employees described herein in subparagraphs a, b, and c of Finding 3 are engaged in the production

of goods for commerce, within the meaning of the Fair Labor Standards Act of 1938, as amended.

4. a. Defendant owns, maintains, and operates nine stations at Danville, Franklin, Greencastle, New Ross, Lebanon, Waldron, and Scottsburg, all located in Indiana, and at Paris and Ramsey located in Illinois. Cream, poultry, and eggs are purchased, received, and handled by defendant's employees employed at these stations, as more particularly described herein. These products are shipped to defendant's processing plants: The Danville, Franklin, Greencastle, New Ross, Lebanon, and Waldron, Indiana stations ship to the Indianapolis processing plant; the Paris, Illinois station ships to the Terre Haute processing plant; the Ramsey, Illinois station ships to the Pana, Illinois processing plant; and the Scottsburg, Indiana station ships to the Columbus, Indiana processing plant.

b. During the year 1952, the total products purchased by these stations, both at the stations and/or the country routes, were as follows:

| | | |
|---|---|---|
| 740,918 Doz. Eggs | —Dollar Value | $236,089.20 |
| 993,120 Lbs. Poultry | —Dollar Value | 197,340.21 |
| 94,078 Lbs. Butter Fat | —Dollar Value | 58,142.70 |
| Grand Total of All Purchases | | $491,572.11 |

The breakdown of products purchased at these stations during 1952 is as follows:

| Location of Station | Dozens of Eggs | Pounds of Poultry | Pounds of Butter Fat | Dollar Value |
|---|---|---|---|---|
| Danville, Indiana | 69,863 | | | $ 20,849.21 |
| | | 112,307 | | 21,633.90 |
| | | | 21,664 | 13,404.54 |
| Franklin, Indiana | 135,528 | | | 43,287.80 |
| | | 118,642 | | 23,665.17 |
| | | | 15,106 | 9,344.99 |
| Greencastle, Indiana | 7,399 | | | 2,416.99 |
| | | | 14,166 | 8,695.95 |
| Lebanon, Indiana | 4,136 | | | 1,324.77 |
| | | | 12,817 | 7,986.52 |
| New Ross, Indiana | 145,890 | | | 51,852.26 |
| | | 331,046 | | 71,106.83 |
| | | | 2,844 | 1,739.62 |
| Waldron, Indiana | 71,820 | | | 21,511.43 |
| | | 136,536 | | 25,804.12 |
| | | | 6,908 | 4,263.17 |
| Scottsburg, Indiana | | | 20,573 | 12,707.91 |
| Ramsey, Illinois | 117,347 | | | 36,900.09 |
| | | 91,855 | | 16,907.88 |
| Paris, Illinois | 188,935 | | | 57,946.65 |
| | | 202,734 | | 38,222.31 |
| Grand Total for All Stations | 740,918 | 993,120 | 94,078 | $491,572.11 |

5. There are two general categories of employees employed by defendant at the nine stations referred to in Finding 4 hereof. These categories are hereinafter referred to as "station employee" and "route employee", respectively. The activities performed by a station employee and a route employee are described more fully in Findings 6 and 7 hereof.

### 6. Station Employee

a. The station employee performs all his work on the premises of the station where he is employed. He receives, purchases, handles, and ships cream, poultry, and eggs.

b. In connection with the purchase of cream, the station employee's activities include the following: The farmer delivers the cream to the station in his own containers. The station employee weighs, stirs, and takes a sample of the cream from which, by the Babcock Test, he determines the butter fat content. The Babcock Test consists of the following: The apparatus consists of a closed cylindrical box containing a rack for holding bottles, so routed that it can be revolved rapidly by hand power or motor power; and several glass bottles, a pipette, and an acid measure. The necessary quantity of cream for a test is weighed and placed in the testing bottle. An equal quantity of sulphuric acid is then poured into an acid measure and then into the bottle containing the cream. The acid and cream are then thoroughly mixed by giving the bottle a rotary motion and at the same time shaking it gently. After several bottles, each containing cream from different lots, have been prepared, they are placed in the centrifuge, which is rotated at a speed varying from 700 to 1200 revolutions per minute, for about 5 minutes. A small quantity of warm water is then added to the bottles, and they are again rotated for about 2 minutes. If the work has been properly done, all the butter fat rises in the neck of the bottle, which is marked with a graduated scale that tells at a glance the percentage of butter fat that the cream contains, and therefore its richness.

After the Babcock Test is completed, the station employee empties the cream from the farmers' containers into defendant's containers, and thereafter washes and cleans the farmers' cans and containers by placing them over a hot water or steam nozzle. The station employee then calculates the amount to be paid for the purchase, and issues, under the authority and in the name of the defendant, a draft to the farmer for the total amount of cream purchased. The price paid per pound of butter fat is determined by the defendant's main office in Indianapolis.

At the Greencastle station the station employee also receives cream purchased by the route employee and also submits such cream to the Babcock Test.

Each of the seven stations that purchase cream is equipped with a Babcock Cream Tester, and at each of these stations the station employee testing the cream holds a tester's license as required by the Indiana Milk and Milk Products Law and Regulations. The license fee for each of the station employees testing cream is paid for by the defendant. Each of the seven stations, under the Indiana Laws and Regulations, also holds a license to engage in the dairy business. These seven stations are Danville, Franklin, Greencastle, Lebanon, New Ross, Scottsburg, and Waldron, all in Indiana.

c. In the purchase of poultry and eggs, the duties of the station employee include the handling of telephone inquiries received throughout the workday from farmer-sellers of poultry and eggs. The station employee quotes the current price being paid by defendant for poultry and eggs, and, at seven of the stations (Danville, Franklin, Greencastle, New Ross, Waldron in Indiana, and Ramsey and Paris in Illinois) also arranges by telephone the terms for the purchase and pick-up from the seller of these products. A list of pick-ups is furnished to the route employee.

Eggs delivered to the station by farmer-sellers are counted by the station employee and placed in egg crates. Poultry delivered to the station are weighed and penned, and, if kept overnight, are watered and fed. The station employee issues, under the authority and in the name of defendant, a draft to the seller for the total amount of poultry and eggs purchased. The prices paid by the station employee for these products are determined by the defendant's manager of the processing plant to which the product is shipped.

The station employee also receives and checks in poultry and eggs purchased and picked up by the route employee, described in Finding 7 hereof. The figures on all of the payments made by the route employee are checked at the defendant's Indianapolis office. The daily shipments to the processing plant are prepared and checked by the station employee and noted on the daily report submitted to the main office, as described in subparagraph d of Finding 7 hereof.

The station employee repairs egg crates and poultry pens, maintains the station in a state of cleanliness, and performs all other duties incident to the maintenance of the station.

d. At the end of each workday the station employee prepares and mails to defendant's main office in Indianapolis one report on the cream purchased that day by both the station employee and route employee and shipments thereof made that day; and another report on the poultry and eggs purchased that day by both the station employee and route employee and shipments thereof made that day. A sample Daily Report of Cream Purchased form has been attached to the Stipulation of Facts, marked Exhibit 1, incorporated therein and made a part thereof. A sample Buyers Daily Report of Poultry and Egg Purchases form has been attached to the Stipulation of Facts, marked Exhibit 2, incorporated therein, and made a part thereof.

The station employee takes a physical inventory of merchandise on hand at the end of the workweek, and supplies on hand at the end of the month. A sample Station Inventory Merchandise and Supplies form has been attached to the Stipulation of Facts, marked Exhibit 3, incorporated therein and made a part thereof; the top half of this form is filled in and sent to defendant's main office weekly; and the bottom half of this form is filled in and sent to the main office monthly.

e. The payroll records of all of the route employees and all employees employed at the stations are maintained at the defendant's Indianapolis office. Each of such employees prepares each week a record of the hours worked by such employee and this record is forwarded to defendant's Indianapolis office with the station reports. The payroll checks are issued from defendant's Indianapolis office and are forwarded directly to each employee each week from the defendant's Indianapolis office.

### 7. Route Employee

a. There are route employees employed at seven of the defendant's stations, namely, Danville, Franklin, Greencastle, New Ross, and Waldron in Indiana, and Ramsey and Paris in Illinois. The route employees are engaged away from the station in purchasing and picking up poultry and eggs (and in the case of Greencastle, also cream) from farmers along their routes, and then transporting these products by truck from such farmers' farms to the station. At the time of purchase the route employee issues, under the authority and in the name of defendant, a draft to the farmer for the amount of products purchased. The route ordinarily consists of established customers, although these route employees do solicit new business on occasion. Pick-ups are also made in accordance with arrangements made by telephone by the station employee.

b. In addition to his route duties as described in subparagraph a of Finding 7 hereof, each of the route employees

performs duties each week in the station assisting the station employees, as more particularly described in Findings 8 through 16 hereof.

8. At the Danville, Indiana station, defendant employs one station employee and one route employee who perform the duties described in Findings 6 and 7 hereof.

The station employee normally works four 8-hour days and two 4-hour days per workweek, and is compensated at the rate of 75 cents per hour with a minimum guarantee of $30 per week. This employee occasionally works in excess of 40 hours per week, and does not receive additional premium compensation as overtime for any hours worked in excess of 40 per workweek.

The route employee normally works five days of 8 to 9 hours, and one day of 4 hours per week. He spends approximately two-thirds of his time operating the country route purchasing poultry and eggs, and approximately one-third of his time at the station performing the duties of the station employee in the purchase of poultry, eggs, and cream. He is compensated at the rate of 75 cents per hour with a guaranteed minimum of $39 per week. He does not receive additional premium compensation as overtime for any hours worked in excess of 40 per workweek.

9. At the New Ross, Indiana station defendant employs one station employee and two route employees who perform the duties described in Findings 6 and 7 hereof.

The station employee normally works three 8-hour days, one 9-hour day, and two 3½-hour days per workweek, and is compensated at the rate of 75 cents an hour with a guaranteed minimum of $30 per week. This employee occasionally works in excess of 40 hours per week, and does not receive additional premium compensation as overtime for any hours worked in excess of 40 per workweek.

One route employee normally works six 10-hour days per workweek. He usually spends five days per week operating a country route purchasing poultry and eggs; this time may vary seasonally. The remainder of his time is spent in the station performing the duties of the station employee in the purchase of poultry, eggs, and cream. He is compensated at the rate of 75 cents an hour with a guaranteed minimum of $45 per week. He does not receive additional premium compensation as overtime for hours worked in excess of 40 per workweek.

The other route employee normally works six 9-hour days per workweek. He generally spends three days per week operating a country route purchasing poultry and eggs; time so spent may vary seasonally. The remainder of his time is spent in the station performing the duties of the station employee in the purchase of poultry, eggs, and cream. He is compensated at the rate of 75 cents per hour with a guaranteed minimum of $45 per week. He does not receive additional premium compensation as overtime for hours worked in excess of 40 per workweek.

10. At the Waldron, Indiana station defendant employs one station employee and one route employee, who perform the duties described in Findings 6 and 7 hereof.

The station employee normally works four 8 to 8½-hour days, and two 3½-hour days per workweek. This employee is compensated at the rate of 75 cents per hour with a guaranteed minimum of $30 per week. This employee does not receive additional premium compensation as overtime for hours worked in excess of 40 per workweek.

The route employee normally works five 9 to 10-hour days, and one 4½-hour day per workweek. He usually spends four days per week operating a country route purchasing poultry and eggs; time so spent may vary seasonally. The remainder of his time is spent in the station performing the duties of the station employee in the purchase of poultry, eggs and cream. He is compensated at the rate of 75 cents per

hour with a guaranteed minimum of $42.50 per week. He does not receive additional premium compensation as overtime for hours worked in excess of 40 per workweek.

11. At the Greencastle, Indiana station defendant employs one station employee and one route employee, who perform the duties described in Findings 6 and 7 hereof.

The station employee normally works two 9 to 10-hour days, and one 12 to 14-hour day per week, and is compensated at the rate of 75 cents per hour with a guaranteed minimum of $20 per week.

The route employee normally works approximately 10 hours per week. He usually spends about 8 hours per week operating a country route purchasing cream, and 2 hours per week in the station assisting the station employee in the handling of cream. He is compensated on a commission basis for cream purchased on the route with a guaranteed minimum of 75 cents per hour for time spent on the route. He is also paid 75 cents per hour for time spent in the station with a guaranteed minimum of $7.50 per week.

12. At the Franklin, Indiana station defendant employs two station employees and until at least May 1952 one route employee, performing the duties described in Findings 6 and 7 hereof.

One station employee normally works four 9 to 10-hour days, and one 12 to 14-hour day per workweek, and is compensated at the rate of 75 cents per hour with a guaranteed minimum of $42.50 per week. This employee does not receive additional premium compensation as overtime for hours worked in excess of 40 per workweek.

The other station employee normally works four 7-hour days, and one 12-hour day per workweek, and is compensated at the rate of 75 cents an hour with a guaranteed minimum of $30 per week. This employee does not receive additional premium compensation as overtime for any hours occasionally worked in excess of 40 per week.

The route employee normally worked four 9-hour days, and one 12-hour day per workweek. He spent approximately 20 hours per week on a country route purchasing and picking up poultry and eggs. He was employed approximately 38 hours at the station, spending approximately 16 hours performing the duties of the station employee and 12 hours in trucking poultry and eggs from the station to the Indianapolis processing plant. He was compensated at the rate of $38 per week and did not receive additional premium compensation as overtime for hours worked in excess of 40 per workweek.

13. At the Lebanon, Indiana station defendant employs one station employee who performs the duties described in Finding 6 hereof.

The station employee normally works three days of approximately 8 hours per day each week. She is compensated on the basis of 5 cents per pound for each pound of butter fat purchased, and 1 cent for each dozen of eggs purchased. with a guaranteed minimum of 75 cents per hour.

14. At the Scottsburg, Indiana station defendant employs two station employees who perform the duties described in Finding 6 hereof.

One station employee normally works four 9-hour days, one 11-hour day, and one 5-hour day per workweek. This employee is compensated at the rate of 75 cents per hour with a guaranteed minimum of $42.50 per week. This employee does not receive additional premium compensation as overtime for hours worked in excess of 40 per workweek.

The second station employee normally works one or two days per week, and is compensated at the rate of 75 cents per hour.

15. At the Ramsey, Illinois station defendant employs one station employee and one route employee who perform the duties described in Findings 6 and 7 hereof.

The station employee normally works in excess of 40 hours per week, and is paid on a commission basis, but is guaranteed not less than 75 cents per hour for all hours worked. This employee does not receive additional premium compensation as overtime for hours worked in excess of 40 per week.

The route employee normally works four 9-hour days, one 12-hour day, and one 5-hour day per workweek. He spends approximately one-half of the workweek in operating a country route and the other half at the station performing the duties of the station employee, and trucking from the station to customers thereof farm supplies sold at the station. This employee does not receive additional premium compensation as overtime for hours worked in excess of 40 per workweek.

Defendant holds a State license to trade in live market poultry at this station, and a separate license for defendant's motor vehicle used in the purchase of poultry on the route, as required by the Illinois Poultry Dealers License Law.

Defendant holds a State Class Two (II) Dealer's License for this station to purchase eggs, as required by the Illinois Egg Law.

16. At the Paris, Illinois station defendant employs two station employees and one route employee who perform the duties described in Findings 6 and 7 hereof.

One station employee normally works six 8-hour days per workweek, and is compensated at a salary of $65 per week. He is in sole charge of the station and supervises and directs the work of the other station employee and route employee, has authority to fire and hire these employees, and makes recommendations concerning their compensation.

The other station employee normally works six 7-hour days per workweek, and is compensated at the rate of 80 cents per hour and receives time and one-half her regular rate of pay for all hours worked in excess of 40 in the workweek.

The route employee normally works six 8-hour days per week. He spends approximately one-half of the workweek in operating a country route, and the other half at the station performing the duties of the station employee. This employee is compensated at the rate of 97 cents per hour and receives time and one-half his regular rate for all hours worked in excess of 40.

Defendant holds a State license to trade in live market poultry at this station, and a separate license for defendant's motor vehicle used in the purchase of poultry on the route, as required by the Illinois Poultry Dealers License Law.

Defendant holds a State Class Two (II) Dealer's License for this station to purchase eggs, as required by the Illinois Egg Law.

17. The parties have stipulated that the defendant's station employees and route employees employed at the stations, as described in Findings 5 through 16, inclusive hereof, are engaged in the production of goods for commerce, within the meaning of the Fair Labor Standards Act of 1938, as amended. The sole issue herein submitted to the Court is whether the station employees and route employees as described herein are exempt from the maximum hours provisions of the Act, as amended, by virtue of Section 13(b) (5) thereof.

18. Exhibits 4 to 18, inclusive, attached to the Stipulation of Facts, incorporated therein and made a part thereof, are official publications of the States of Illinois, Indiana, Minnesota, Kansas, Missouri, Wisconsin, New York, Michigan, North Dakota, Iowa, Mississippi, Nebraska, Tennessee, Oklahoma, and South Dakota pertaining to dairy, poultry and egg laws of the aforesaid respective states; these official publications consist of State Laws, Regulations, bulletins, manuals, and pamphlets. With respect to the station and station employee as described in Findings 4 to 17, inclusive, herein, the aforesaid publica-

tions disclose the following: Stations are referred to as buying stations, cream-buying stations, milk or cream stations, cream stations, receiving stations, and milk and/or cream-gathering stations. A station employee is referred to as an operator, station operator, cream station operator, receiver of milk and/or cream, buyer, cream buyer, grader, sampler and tester; a station employee is never referred to as an outside buyer.

## Conclusions of Law

1. The Court has jurisdiction of the parties and the subject matter of this cause of action pursuant to the provisions of the Fair Labor Standards Act of 1938, as amended, Act of June 25, 1938, c. 676, 52 Stat. 1060, as amended, 63 Stat. 910, U.S.C.A. tit. 29, § 201 et seq., hereinafter called the Act.

2. The defendant's station employees and route employees, described in Findings 5 to 16, inclusive, hereof, are engaged in the production of goods for commerce within the meaning of Section 3(j) and Section 7 of the Act, as amended.

3. The exemption from the maximum hours provisions of the Act provided by Section 13(b) (5), with respect to any individual employed as an outside buyer of poultry, eggs, cream, or milk, in their raw or natural state, is inapplicable to defendant's station employees, described in Findings 5 to 16, inclusive hereof. The word "outside" as used in Section 13(b) (5) is to be read in its ordinary, every-day sense of external to, out of, or away from the employer's place or places of business. Inside buying or other inside work not directly in conjunction with and incidental to outside purchases or solicitations is non-exempt.

4. The exemption from the maximum hours provisions of the Act provided by Section 13(b) (5), with respect to any individual employed as an outside buyer of poultry, eggs, cream, or milk, in their raw or natural state, is inapplicable to defendant's route employees, described in Findings 3, and 5 to 16, inclusive hereof, during each workweek that any one of them is engaged both in operating a country route and in performing the duties of a station employee at defendant's stations or processing plants.

5. The exemption from the maximum hours provisions of the Act provided by Section 13(b) (5) with respect to any individual employed as an outside buyer of poultry, eggs, cream, or milk, in their raw or natural state, is applicable to defendant's route employees, described in Findings 3, and 5 to 16, inclusive hereof, during each workweek that any one of them is exclusively engaged in operating a country route.

6. Since September 1950, the defendant has violated Sections 7, 15(a) (1), and 15(a) (2) of the Act, as amended, with respect to station and route employees, described in Findings 5 to 16, inclusive hereof, and Conclusions of Law 3 and 4 hereof, and, pursuant to Section 17 of the Act, plaintiff is entitled to an order restraining the defendant from violating the provisions of Sections 15 (a) (1) and 15(a) (2) of the Act with respect to station and route employees, described in Findings 5 to 16, inclusive hereof, and Conclusions of Law 3 and 4 hereof, with costs to be taxed by the Clerk of this Court.

Let judgment be entered in accordance with the foregoing Findings of Fact and Conclusions of Law.